

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

February 4, 1939

Honorable Thomas L. Blanton, Jr.
County Attorney, Shackelford County
Albany, Texas

Dear Mr. Blanton:

> Opinion No. O-66
> Re: Bond funds, diversion of proceeds-
> Authority of Commissioners' Court
> to transfer-
> Authority of County Treasurer to
> re-transfer
> Liability of officer for alleged
> illegal transfers of certain
> funds

  We have carefully investigated the different questions raised by you in a letter addressed to Honorable William McCraw, Attorney General, dated December 14, 1938, a copy of which letter was enclosed by you in your communication of January 6, 1939, to Honorable Gerald C. Mann, present Attorney General.

  The facts stated by you are quite lengthy, and for the purposes of this opinion we take the liberty to summarize same as follows:

  Sometime prior to 1931 the voters of Shackelford County authorized a county wide bond issue of $500,000. At or about the same time the voters of Road District No. 2 of said county authorized a bond issue of $300,000. This money was voted for the purpose of building roads, apparently under the provisions of Article 3, Sec. 52 of the Constitution of Texas. It appears agreed that after the roads were completed, there were several thousand dollars balance in each of such bond funds. Part of this money was by order of the court, on July 25, 1935, transferred from Shackelford County Bond Fund to the General Fund of the county and part from Road District No. 2 Fund to the Road and Bridge Fund. An amount equal to

the latter funds was on August 7, 1937, ordered transferred to the General Fund from the Road and Bridge Fund. At the time of each of these transfers, the General Fund was overdrawn.

There seems some dispute on the facts between your statements in your letter and the recitals of the orders of the Commissioners' Court quoted by you as to whether the bonds and interest, and obligations for which the bonds were originally issued had been fully paid off and satisfied at the time of said transfers. Of course, you realize we are not in position to judge disputed facts, but for the purpose of this opinion, your position will be taken as proven, i.e., that an indebtedness existed on the original issue of the bonds.

On the basis of the above, given by you in complete detail, you propound eight questions:

"(1) Was the transfer of July 25, 1935, from 'Shackelford County Bond Fund' to the 'General Fund' a legal transfer?

"(2) Was the transfer of July 25, 1935, from 'Road District No. 2 Fund' to the 'Road and Bridge Fund' a legal transfer?

"(3) Was the transfer of August 7, 1937, from 'Road and Bridge Fund' to the 'General Fund' a legal transfer?

"(4) If above transfers are held illegal, would the County Treasurer have authority to transfer, without an order of the Commissioners' Court, an amount equal to that heretofore transferred by the order of the court from 'Road District No. 2 Fund' to the 'General Fund' from said 'General Fund' to 'Sinking Fund No.2, Road District No.2"?

"(5) Would the County Treasurer, without an order of the Commissioners' Court have the authority to transfer from the 'General Fund' to 'Sinking Fund No.3' an amount equal to the amount heretofore transferred by the order of the Court from the 'Shackelford County Bond Fund' to the 'General Fund'?

"(6) Is there any criminal liability for these transfers: (a) on the part of the County Judge, (b) on the part of the County Commissioners, and (c) on the part of the County Treasurer?

Hon. Thomas L. Blanton, Jr., Feb. 4, 1939, Page 3

"(7) Is there, in your opinion, civil liability for these transfers: (a) on the part of the County Judge, (b) on the part of the County Commissioners, and (c) on the part of the County Treasurer?

"(8) In the event the Commissioners' Court does not pass an order transferring the funds back to the proper funds, what action would you advise this office to take?"

With reference to the first three questions, we hold all transfers of such funds to have been an illegal diversion thereof. We carefully studied the opinion heretofore rendered on February 7, 1938, by James M. Noff, then Assistant Attorney General to Hon. S. C. Coffee, and agree therewith. Other authorities than the case of Carroll v. Williams, 202 S.W. 504, cited by Mr. Neff, which we think in line therewith: 11 Tex. Jur. 609, Sec. 78; Robbins vs. Limestone County, 268 S.W. 915, p. 919; Commissioners' Court v. Burk, 262 S.W. 94 (Civ. App., writ refused); Sanders v. Looney, 225 S.W. 280; Wallace v. Commissioners Court of Madison County, 281 S.W. 593 (Civ. App. reversed on other grounds). From these authorities we conclude the correct statement of the law to be that (constitutional funds may not be transferred from one fund to another; may not be diverted; and Commissioners' Courts have no power to expend for one purpose tax money raised ostensibly for another.) In this connection, we point out that the opinion of July 22, 1935, written by Assistant Attorney General Victor W. Bouldin to Honorable S. C. Coffee, seems to overrule the opinion of former Assistant Attorney General Davis, dated March 13, 1935. We mention these opinions because they are set out in your brief and seem to have been the basis of the Commissioners' orders also set out in your brief. Copies of all three opinions are appended hereto. We also append a copy of an opinion written March 17, 1937, by Assistant Attorney General Victor W. Bouldin to Honorable S. C. Smith, County Attorney, Meridian, Texas.

Answering your fourth question we have carefully noted the provisions of Title 36, R.C.S., relating to the County Treasurer. Article 1709 directs the Treasurer to pay and apply moneys "as required by law" but further "in such manner as the commissioners' court of his county may require and direct".

Article 1713 is as follows: "The County Treasurer shall not pay any money out of the county treasury except in pursuance of a certificate or warrant from some officer authorized by law to issue the same; and if such treasurer shall have any doubt of the legality or propriety of any order, decree, certi-

the same, but shall make report thereof to the commissioners' Court for their consideration and direction."

We find Article 1710, headed "Accounts", which requires county treasurers to keep true accounts of receipts and expenditures, further provides he shall do those things "and direct prosecutions according to law for the recovery of all debts that may be due his county, and superintend the collection thereof."

The County Treasurer is a constitutional officer, and the Legislature has the power to prescribe his duties. (Const. Art. 16, Sec. 44). We find no authority for transfer of funds by the treasurer on his own inclination, but the statutes above quoted seem to clearly indicate his duty in the premises. Therefore, we hold the answer to questions Nos. 4 and 5 would be in the negative.

Question No. 6 should be answered there is no criminal liability on the part of either of the officers mentioned. No officer, any more than a private individual, may be punished for any act or omission as a penal offense, unless the same is expressly defined and the penalty affixed by the written law. See P. C. (1925) Art. 3; State v. Kingsbury, 37 Tex. 159. In the Kingsbury case there was no statute making the act of the County Court in unlawfully approving an account against the county a penal offense. See 34 Tex. Jur. 479. See also opinion on motion for rehearing in case of Hooper v. State, 279 S. W. 449.

The correct answer to your question No. 7 has given much concern. From a careful examination of your entire brief, however, and the peculiar fact situation of the matter before us, we have concluded there should be no civil liability of any of the officers mentioned by you.

We are of opinion the county judge and commissioners, in passing the orders mentioned above, and set out fully in your inquiry, were acting in a judicial capacity or at least in a quasi-judicial capacity. If so, the respective members of the court are not responsible for civil damages. In this connection, your attention is called to the case of Comanche County v. Burks, 166 S. W. 470 (Civ. App. writ refused). In that case the Commissioners court sold certain school lands, and instead of investing the proceeds of the sale in securities as directed by the Constitution, from time to time, diverted portions thereof and appropriated the same to the general purposes of the county. The court, in a well written opinion, held the officers acted in good faith in a judicial or quasi-judicial capacity, and were therefore not personally liable. The county, as such, was held

liable to the school fund and judgment entered accordingly. See in addition to the Comanche County Case, supra, 22 R. C. L. p. 478, Sec. 152; p. 484, Sec. 152; 46 C. J. 1042; 34 Tex. Jur. p. 466, et seq.; Gallaway v. Sheppard, 89 S. W. (2) 417 (Civ. App. writ dismissed); McDonald v. Farmer, 56 S. W. 555 (Civ. App.); Creswell Ranch & Cattle Co. v. Roberts County, 278 S. W. 737 (Civ. App. writ refused).

Under authority of the case of McDonald v. Farmer, supra, we think your question is specifically answered as to the County Treasurer. The recent case of Hoffman v. Davis, 100 S. W. (2d) 94, (Comm. App.) fully discusses the rights and duties of county treasurers and is respectfully referred to therefor.

By virtue of the authorities cited, question No. 7 should be answered in the negative as to all officers there inquired about.

As to your duty in the premises, as reflected by your question No. 8, we suggest you refer the matter to the County Treasurer with the advice that he formally request the Commissioners' Court to pass an order transferring the funds in controversy to the proper sinking funds. If the Commissioners Court should then refuse to do so, under the authority of Hoffman v. Davis, supra, there appears no doubt of the right and duty of the treasurer to bring an action. The Court in that case did not pass upon the question of whether the County Attorney would have a concurring right but the provisions of Art. 339, R. C. S. would seem to bestow it.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Benjamin Woodall
Benjamin Woodall
Assistant

BW:BT

APPROVED:

Gerald C. Mann
ATTORNEY GENERAL OF TEXAS